## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| READY FOR RON<br>66 W. Flagler Street<br>Suite 900, #6781<br>Miami, FL 33130 | )<br>)<br>)<br>)<br>)<br>) |
| *Plaintiff,* | )<br>) |
| v. | )<br>) |
| FEDERAL ELECTION COMMISSION<br>1050 First Street, NE<br>Washington, DC 20463 , | )<br>)<br>)<br>) |
| *Defendant.* | )<br>) |
| _____ | ) |

## COMPLAINT

This is a remarkable case in which the Federal Election Commission ("FEC" or "Commission") seeks to prohibit literal, pure political speech. Ready for Ron ("RFR") is a political committee which seeks to draft Florida Governor Ron DeSantis as the Republican nominee for President in the 2024 election. It has prepared a petition expressing support for Governor DeSantis and encouraging him to become and/or remain a presidential candidate, running advertisements to invite people to sign it. To date, over 80,000 of Governor DeSantis' supporters have joined together to sign the petition, either via the internet or by telephone.

RFR wishes to provide its signed petition, including the names and contact information provided by its signatories, to Governor DeSantis—a traditional form of political expression and association. The Commission has issued an Advisory Opinion concluding the Federal Election Campaign Act ("FECA") prohibits RFR from doing so while Governor DeSantis is either "testing the waters" or once he has become a candidate. However, the Commission was unable to reach a

conclusion as to whether RFR may do so before Governor DeSantis begins testing the waters, thereby depriving RFR of "safe harbor" status which would protect it from potential civil penalties or criminal prosecution for engaging in such expressive association.

The Commission has taken federal campaign finance law to an unconstitutional extreme. Among other things, it distorts the FECA's plain meaning by treating a signed political petition as a "contribution." It flatly ignores the U.S. Court of Appeals for the District of Columbia's binding ruling in *Federal Election Comm'n v. Machinists Non-Partisan Political League*, 655 F.2d 380 (D.C. Cir. 1981), holding the Commission may neither regulate efforts to draft federal candidates nor regulate disbursements to individuals who are not yet federal candidates. It ignores the FECA's legislative history, throughout which the Commission repeatedly asked Congress to expand the definition of "contribution" to include transfers made for the purpose of influencing someone to become a federal candidate—proposals Congress has repeatedly declined to adopt. And, perhaps most disturbingly, the Commission has exceeded the constitutional limits of its authority. The Supreme Court has upheld the validity of limits on contributions to candidates specifically on the grounds they entail only minimal restrictions on expression. It has never allowed the Commission to prohibit *pure political speech* under the guise of contribution limits.

Moreover, political committees operating online platforms for earmarked and conduit political contributions already convey to actual and potential candidates precisely the same email and phone information about contributors that the FEC's advisory opinion restricts RFR from providing under the instant Advisory Opinion. More than $2.5 billion dollars in political contributions—more than a quarter of all political contributions, representing tens of millions of

individual contributors and contributions—are made as earmarked contributions through just two PACs, ActBlue and WinRed.[1]

When a person contributes to a current or potential candidate through either ActBlue or WinRed, it collects the contributor's phone number and e-mail address and passes it along to the recipient candidate, even though it is not legally required to do so and the recipient candidate is not required to report such information to the FEC.[2] It is perverse and offensive to free speech principles that, if RFR were collecting $1 contributions through its online platform to forward to a "draft" fund to encourage the candidacy and nomination of Governor DeSantis, that the Commission would allow RFR to collect and forward the contributors' phone numbers and e-mail addresses, but deny RFR the right to do the same with the contact information of people who are exercising their fundamental right to associate to engage in pure political speech by signing a petition to Governor DeSantis *without* making a monetary contribution. This Court should reaffirm and enforce the right of citizens to band together to express their support for a potential candidate and attempt to persuade him to run for federal office.

A signed political petition is pure political speech. The federal government may neither prevent a draft committee from soliciting and gathering signatories' names and contact information

---

[1] *See PAC Profile: ActBlue*, Open Secrets (last referenced Oct. 20, 2022), https://www.opensecrets.org/political-action-committees-pacs/actblue/C00401224/summary/2022; *PAC Profile: WinRed*, Open Secrets (last referenced Oct. 20, 2022), https://www.opensecrets.org/political-action-committees-pacs/winred/C00694323/summary/2022.

[2] *See ActBlue*, A.O. 2014-19, at 4-5 (Jan. 15, 2015) (allowing ActBlue to accept contributions made to "draft" candidates for federal office); *see also Pro-Life Democratic Candidate PAC*, A.O. 2019-11, at 2, 6 (July 25, 2019) (allowing a draft fund to accept conduit contributions to provide to a pro-life Democratic presidential candidate who met certain "experience and endorsement criteria" if one were drafted); *ActBlue*, A.O. 2006-30, at 6-7 (Nov. 9, 2006) (allowing ActBlue to accept contributions for prospective Democratic presidential candidates).

to attempt to persuade someone to run for office or remain a candidate for office, nor bar a potential candidate's supporters from associating together to express their political support for that person by providing their names and contact information.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201, because it arises under a federal statute and seeks, in part, declaratory relief.

2.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant is an entity of the U.S. Government.

## PARTIES

3.      Plaintiff READY FOR RON ("RFR") is an unauthorized, non-connected hybrid "draft" political committee[3] headquartered in Miami, Florida. It was formed to draft Florida Governor Ron DeSantis as the Republican party's nominee for President in 2024.

4.      Defendant FEDERAL ELECTION COMMISSION ("FEC" or "the Commission") is an independent agency responsible for enforcing federal campaign finance law, including the Federal Election Campaign Act ("FECA"). It is headquartered in Washington, D.C.

## READY FOR RON WISHES TO PROVIDE A SIGNED PETITION TO GOVERNOR DESANTIS TO ENCOURAGE HIM TO RUN FOR PRESIDENT

*Background on Ready for Ron*

5.      Florida Governor Ronald Dion DeSantis ("Governor DeSantis") is presently not a candidate for President, a candidate for federal office, a federal officeholder, or testing the waters with regard to such a candidacy under 11 C.F.R. § 100.72(a).

---

[3] *See Carey v. FEC*, 864 F. Supp. 2d 57 (D.D.C. 2002).

6.      RFR is a draft committee formed for the purpose of drafting Governor DeSantis as a candidate for the Republican nomination for President in the 2024 election. It is not affiliated with Governor DeSantis in any way and has not coordinated with him or his staff with regard to the petition.

7.      As a hybrid "*Carey*" PAC, RFR has both a traditional "hard money" account as well as a non-contribution "*Carey*" account which may not be used to fund contributions, but may be put toward independent expenditures.

a.      RFR accepts contributions to its "hard money" primary treasury account subject to FECA's prohibited source restrictions and contribution limits. *See* 52 U.S.C. § 30116(a)(1)(C), (a)(2)(C); FEC, *Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold*, 86 Fed. Reg. 7867, 7868 (Feb. 2, 2021).

b.      RFR also solicits and accepts unlimited contributions to its *Carey* account, subject to the FECA's prohibited source restrictions.

8.      Neither RFR nor its agents are coordinating with Governor DeSantis, his gubernatorial campaign, or any federal or state political committees authorized by Governor DeSantis. To the extent RFR uses any common vendors with Governor DeSantis, it is requiring firewalls as a "prophylaxis-upon-prophylaxis" measure. To the best of its knowledge, RFR does not and will not employ any former employees or independent contractors of the DeSantis gubernatorial campaign (or any potential future "testing the waters" or presidential campaign).

*RFR's Petition*

9.      RFR has created a petition to attempt to persuade Governor DeSantis to become and remain a candidate for the Republican nomination for President in the 2024 election. RFR has invited members of the general public who hold that same political belief to associate together to

convey this political message through either RFR's website or a dedicated phone line RFR established.

10.     Nationally renowned political strategist Ed Rollins, who served as Special Assistant to three Presidents, publicized the launch of RFR and its petition in May 2022 through interviews with national news programs.

11.      RFR's website, http://www.ReadyforRon.com, displays the text of the petition. It provides users with an opportunity to electronically submit their name, phone number, e-mail address, and zip code (collectively, "Signatory Information") to be added to the petition. A person is not required to provide all of that information, however. They may sign the petition so long as they provide at least their name and e-mail address.

12.     The page on which people enter their Signatory Information contains a message stating, in relevant part, "I am Ready for Ron! Let Ron know I'm behind him and want to join his team!" A notice at the bottom of the screen informs users by virtually signing the petition and providing their information, they are requesting to have RFR provide it to Governor DeSantis.

13.     RFR has also established telephone numbers people may call to "sign" the petition by having their names and contact information added to it. When a person calls the number, a recorded message invites them to join the petition if they wish to "Let Ron know, 'I am Ready for Ron!'" and that they are "behind him and want to join his team!'" It further notifies callers by signing the petition, they are requesting to have their names and contact information provided to Governor DeSantis.

14.     In addition, RFR conducts "robocalls" in which it dials people's phone numbers and plays them a pre-recorded message about the petition, inviting them to sign it. A person may

press "1" to request to have their name and contact information added to the petition and provided to Governor DeSantis.

15.     A person's name and contact information will be added to the petition only if they ask to sign the petition through RFR's website(s) or phone number(s) designated for that purpose. RFR has not and will not add anyone to the petition without their request and consent.

16.     RFR's petition has so far attracted more than 80,000 signatures.

17.     RFR wishes to provide the signed petition, including the names and contact information provided by its signatories, to Governor DeSantis. Depending on how quickly RFR is able to amass signatures, as well as Governor DeSantis' independent decisions and actions over which RFR lacks control, RFR will wind up submitting the Petition either:

        a.     before Governor DeSantis begins "testing the waters" for a potential presidential candidacy, *see* 11 C.F.R. § 100.72(a);

        b.     while Governor DeSantis is testing the waters; or

        c.     after Governor DeSantis has become a candidate for federal office.

18.     As discussed below, the Commission has issued an advisory opinion concluding it is illegal for RFR to provide the signed petition to Governor DeSantis while he is testing the waters or a candidate. The Commission failed to reach a conclusion as to whether RFR may provide the petition before Governor DeSantis begins testing the waters, thus depriving RFR of "safe harbor" status for such activity, 52 U.S.C. § 30108(c)(1)(A), (2), and exposing RFR to the possibility of administrative proceedings and potential sanctions before the Commission. In other words, according to the Commission, there is no point in time at which RFR may legally provide its signed petition to Governor DeSantis.

19.     After submitting the petition to Governor DeSantis, RFR wishes to continue encouraging him to become or remain a candidate by submitting subsequent communications to him reiterating support for his candidacy, accompanied by the names and contact information of new signatories.

20.     The petition contains signatories' names and contact information for numerous reasons:

    a.     including names and contact information is traditional for political petitions, including most candidacy petitions required by state law;

    b.     signatories have a fundamental First Amendment right to reveal their identities rather than being compelled to engage in anonymous joint speech, *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995);

    c.     providing signatories' contact information helps establish the authenticity of the signatures and allows Governor DeSantis to confirm they are not fraudulent;

    d.     providing signatories' contact information helps to demonstrate the seriousness and dedication of the signatories precisely through their willingness to identify themselves in greater detail beyond a name; and

    e.     in the event Governor DeSantis decides to begin testing the waters either before or after receiving the signed petition, the Commission's precedents would allow him to gather more information from his potential supporters as part of his "deliberative process of deciding to become a candidate." *Askew*, A.O. 1981-32, at 5 (Oct. 2, 1981).

*RFR Invited Governor DeSantis' Supporters to Sign the Petition*

21.     RFR has run television, internet, and social media advertisements, in addition to sponsoring outbound robocalls, to notify people about the petition and invite them to sign it. One of the advertisements expressly exhorts viewers, "Call [PHONE NUMBER] and Press 1. Draft

8

Ron DeSantis in 2024." A voiceover states in relevant part, "Please call [PHONE NUMBER] and Press 1 to sign our pledge of support to draft Ron DeSantis to run in 2024."

22.    The audio disclaimer at the end of the video advertisements states, "Paid for by Ready for Ron, which is responsible for the content of this message." A written disclaimer displayed at the bottom of the screen at the end of the advertisement reiterates, "PAID FOR BY READY FOR RON, NOT AUTHORIZED BY ANY CANDIDATE OR CANDIDATE COMMITTEE."

23.    RFR has also invited potential supporters to sign the petition through e-mail. It has rented distribution lists to send e-mails to potential DeSantis supporters, encouraging them to visit RFR's website and add their name to the petition. These e-mails also contain the written disclaimer, "PAID FOR BY READY FOR RON, NOT AUTHORIZED BY ANY CANDIDATE OR CANDIDATE COMMITTEE."

24.    All of RFR's past, ongoing, and concretely intended future advertising urge, or will urge, viewers to either call RFR's phone number or visit its website to sign the petition.

25.    RFR has spent approximately $25,000-50,000 each week on advertisements, and intends to continue doing so through the 2024 election. It has drawn, and will continue to draw, these funds from both its hard-money and non-contribution *Carey* accounts.

26.    As of October 18, 2022, RFR has gathered over 80,000 signatures for its petition. Each signature includes the name and, at a minimum, either e-mail address or phone number of each signatory. As alleged below, the Commission's Advisory Opinion improperly, illegally, and unconstitutionally deems the list of petition's signatories to be equivalent to a mailing list or contributor list. *See* Exh. 11 at 5-8. At an approximate fair-market value of $0.05 per entry, the Commission would assign a cash-equivalent value of over $2,900 to the signed petition. Under the

Commission's advisory opinion, RFR would violate the $2,900 limit on contributions from a non-multicandidate political committee to a candidate by providing the signed petition to Governor DeSantis, either while he is testing the waters for a potential candidacy or once he becomes a candidate. The Commission has declined to reach an opinion as to whether RFR may provide the signed petition to Governor DeSantis before he begins testing the waters, despite the absence of any applicable statutory prohibition.

27.     RFR wishes to be able to provide the signed petition to Governor DeSantis, including the names and contact information for its signatories, at a time of its choosing, regardless of whether Governor DeSantis has started testing the waters (or is deemed by the Commission to have begun testing the waters) or becomes a candidate. It does not wish to be effectively compelled to provide the petition to Governor DeSantis as soon as possible, before he has begun testing the waters. RFR likewise wishes to provide supplements and updates to the petition to Governor DeSantis in the future by providing the names and contact information of additional signatories, regardless of whether Governor DeSantis is testing the waters or is a candidate at the time.

### THE FEC'S ADVISORY OPINION PROHIBITS RFR FROM ENGAGING IN PURE POLITICAL SPEECH AND VIOLATES ITS RIGHT OF EXPRESSIVE POLITICAL ASSOCIATION

28.     Out of an abundance of caution because it is seeking to exercise its rights within an aggressively regulated area of constitutionally protected activity, RFR submitted an advisory opinion request with the Commission in late May to confirm the permissibility of its intended and ongoing actions. A true and complete copy of RFR's advisory opinion request is attached as Exhibit 1.

29.     RFR's advisory opinion request included the following inquiries:

●      May [RFR] provide its Petition, along with the accompanying list of over 58,000 signatories and their Signatory Information, to Ron DeSantis to

attempt to persuade him to become a candidate for the Republican nomination for President in 2024?

● Assuming the answer to #1 is "yes," must [RFR] do so, if at all, before DeSantis:

  ○ starts testing the waters to become a candidate for the office of President, or

  ○ becomes a candidate for the office of President?

Exh. 1 at 4.

30. After the Federal Election Committee circulated two potential draft responses, RFR submitted a comment in response. A true and complete copy of RFR's comment is attached as Exhibit 2.

31. On September 15, 2022, the Commission held a public hearing on its potential draft responses, but declined to adopt either of them. A video of the hearing is available at https://www.youtube.com/watch?v=BWfuTD46wwM. During the hearing, Commissioners asked RFR to provide precedents that "a mailing list would not be a thing of value." *Id.* at 8:18-8:24.

32. Toward the end of the hearing, the Commission indicated it would be preparing a new Draft C of an advisory opinion for RFR for consideration, and RFR expressly requested the opportunity to comment on Draft C. *Id.* at 58:40-59:00. The next day, RFR reiterated its request by e-mailing a letter to the Commission, "respectfully request[ing] the opportunity to submit comment on any such new draft advisory opinion," and "take such opportunity to respond to several of the new issues that various commissioners raised during the hearing." A true and complete copy of RFR's request is attached as Exhibit 3.

33. On Wednesday, September 21, FEC Attorney Heather Filemyr e-mailed RFR requesting a "14-day extension" of the Commission's deadline for providing an advisory opinion, until October 5, 2022. A true and complete copy of the email from Filemyr to RFR, and the

affirmative reply from RFR to Filemyr is attached as Exhibit 4. The e-mail expressly noted, "The Commission's next open meeting is scheduled for September 29." *Id*.

34.     The Commission subsequently prepared and circulated a third potential draft advisory opinion, labeled Draft C. The document is identified as an "AGENDA ITEM For meeting of September 29, 2022." It is labeled "AGENDA DOCUMENT NO. 22-36-C." On September 26, 2022, Heather Filemyr e-mailed a copy of Draft C to RFR. Her cover e-mail stated the Commission "is accepting public comments until noon on September 28." She added, "For the open meeting on Thursday, you've let us know that Mr. Backer will attend in person. Do you also plan to attend online?" A true and complete copy of Draft C; the cover sheet identifying it as an agenda item for the Commission meeting of September 29, 2022; and the cover e-mail from Heather Filemyr to RFR transmitting Draft C, are attached as Exhibit 5.

35.     The Sunshine Act notice for the September 29, 2022 meeting listed "Draft Advisory Opinion 2022-12: Ready for Ron" as a "MATTER[] TO BE CONSIDERED." A true and complete copy of the Sunshine Act notice for the September 29, 2022, hearing is attached as Exhibit 6.

36.     On September 27, 2022, RFR submitted a 25-page comment in response to Draft C, identifying numerous legal authorities the draft directly contravened, providing the requested precedents in support of its position, and responding to many of the concerns raised at the hearing. A true and complete copy of RFR's second comment is attached as Exhibit 7.

37.      Completely indifferent to the legality of its conclusions, the FEC arbitrarily and capriciously ignored RFR's comment while simultaneously cancelling public consideration of RFR's Advisory Opinion without warning. Rather, on September 27, the Commission circulated a revised version of Draft C for a private written 24-hour "tally vote." The public received no advance notice of this revised version, and the Commission did not solicit, accept, or receive any

public comment on it. The tally vote was conducted behind closed doors and without further hearing or internal debate, to conclude by September 28 at 3:00 P.M. A true and complete copy of the Commission's tally vote memorandum is attached as Exhibit 8.

38.     Upon learning of the Commission's plan, RFR immediately e-mailed a letter notifying the Commission about the new authorities identified in its September 27 comment and "respectfully request[ing] the opportunity to appear before the Commission at a public hearing concerning the Commission's new draft advisory opinion, Draft C." At the time, RFR was unaware the Commission had revised Draft C and was voting on a version that differed from the one the Commission had publicly circulated earlier. A true and complete copy of RFR's letter, along with the cover memorandum the Commission's Secretary appended when circulating that letter to Commission members, is attached as Exhibit 9. The cover memorandum from the Commission's Secretary declared, "This item is on the agenda for the Open Meeting of September 29, 2022." *Id*.

39.     On September 28, 2022—the day before the scheduled public hearing on Draft C— the Commission concluded its paper tally vote and approved Draft C as its advisory opinion without a public hearing on either the publicly circulated version or the secretly revised version of the draft. A true and complete copy of the Commission's certification concerning the vote is attached as Exhibit 10.

40.     By its own admission, the Commission blithely rubber-stamped Draft C as its advisory opinion, thereby arbitrarily and capriciously ignoring RFR's Public Comment of September 27, its follow-up summary and request to appear of September 28, and the legal authorities those submissions contained. Rather, the Commission completely denied RFR a hearing on Draft C. The advisory opinion the Commission adopted states it is based only on "[RFR's] letters dated May 25 and August 29, 2022, [its] emails dated June 17 and September 14,

2022, disclosure reports filed with the Commission, and publicly available information." *Ready for Ron*, Advisory Opinion 2022-12, at 1 (Sept. 28, 2022). A true and complete copy of the Advisory Opinion the Commission adopted is attached as Exhibit 11.

41.     The Advisory Opinion began by declaring RFR would be making an in-kind contribution to DeSantis by providing the signed petition to him once he becomes a candidate. Exh. 11 at 5. The FECA defines "contribution" as "any *gift* . . . of money or *anything of value* made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i) (emphasis added).

a.      The Commission did not address whether providing a signed petition to a potential candidate or candidate constitute a "gift" for purposes of that definition.

b.      The Commission concluded the petition constituted a "thing of value" because the contact information for the signatories, if purchased on the open market, had a potential commercial value. Exh. 11 at 5. The Commission further noted that its regulations and past advisory opinions treated contributor lists, distribution lists, and mailing lists as "things of value" and therefore "contributions." *Id*. at 5-6 (citing 11 C.F.R. § 100.52(d)(1)). The Commission simply assumed RFR's signed petition should be treated the same as those other types of lists without considering any of its materially distinguishing characteristics, including: (i) the petition conveys a constitutionally protected political message, while the other types of lists do not; (ii) each signatory on the petition has affirmatively asked to have their name and contact information be appended so they could engage in constitutionally protected speech and association, while people may have their information included on other types of lists without their knowledge and consent; and (iii) barring RFR from conveying the signed petition interferes with Governor

14

DeSantis' First Amendment right to receive political communications in a way restrictions on other types of lists do not.

42.     The Commission then concluded, based on a conservative estimate of 0.05 cents for each signatory's name and accompanying contact information, that providing a signed petition with the names and contact information for at least 58,000 signatories to Governor DeSantis after he becomes a candidate would constitute an illegal excessive contribution, because its value would exceed $2,900. Exh. 11 at 6.

43.     The Commission went on to declare, under its "testing the waters" regulation, 10 U.S.C. § 100.72, it is likewise illegal to provide the signed petition to Governor DeSantis even before he becomes a candidate, while he is "testing the waters." Exh. 11 at 8 ("[I]f Governor DeSantis were to begin testing the waters for a potential federal candidacy, and were RFR to provide its petition with the names and compiled contact information to him, the petition and contact information must comply with the amount limitations and source prohibitions of the Act.").

44.     Finally, the FEC concluded RFR may not fund its petition-gathering activities from its non-contribution *Carey* account, since providing the petition to Governor DeSantis would constitute a "contribution." Exh. 11 at 9-10.

45.     The Commission could not reach a conclusion as to whether RFR may provide its signed petition to Governor DeSantis "when Governor DeSantis is neither testing the waters nor a federal candidate." Exh. 11 at 1.

### THE COMMISSION'S ADVISORY OPINION VIOLATES THE RIGHTS OF RFR AND THE PETITIONS' SIGNATORIES

*The Commission's Advisory Opinion Violates the Constitution*

46.     The Commission's advisory opinion did not consider any constitutional problems with its conclusions.

47.     The First Amendment does not allow the FEC to prohibit pure political speech and expressive political association by banning RFR from providing a signed petition containing its signatories' contact information to Governor DeSantis to attempt to persuade him to become and/or remain a candidate.

48.     The U.S. Supreme Court has held contribution limits are generally subject only to intermediate (or "exacting") scrutiny and are valid because they typically "entail[] only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley v. Valeo*, 424 U.S. 1, 20-21 (1976) (per curiam).

    a.      *Buckley* explained, "A contribution serves as a general expression of support for the candidate and his views, but does not communicate the basis for the underlying support. . . . [T]he expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate." *Buckley*, 424 U.S. at 21.

    b.      The Court further emphasized contribution limits "involve[] little direct restraint on . . . political communication" because they do "not in any way infringe the contributor's freedom to discuss candidates and issues." *Buckley*, 424 U.S. at 21.

49.     This rationale for allowing contribution limits is inapplicable where the supposed contribution is, itself, political speech, such as the signing of a petition expressing ones views. The Supreme Court has never allowed contribution limits to be applied to prohibit pure political speech by American citizens.

50.     Under the First Amendment, the Commission may not bar RFR from providing a petition to Governor DeSantis encouraging him to run for President, simply because it contains

the names and addresses of its signatories. Federal campaign finance law does not require anonymous political speech.

51.     Joining together in a petition to express a political sentiment is itself a fundamental, time-honored form of political association. *Citizens Against Rent Cont./Coalition for Fair Hous. v. Berkeley*, 454 U.S. 290, 294 (1981).

52.     Just as individuals have the right to write to Governor DeSantis to encourage him to run for President—and provide their return address when doing so—they have the right to join together in a petition to jointly convey the same message.

53.     The FEC's refusal to issue an advisory opinion recognizing RFR's right to provide its signed petition or supplemental updates to Governor DeSantis at any point—before he begins testing the waters, while he is testing the waters, or if he becomes a candidate—is an unconstitutional burden on the First Amendment rights of RFR and the petition's signatories to engage in pure political speech and expressive political association.

54.     The FEC's refusal to allow RFR to use funds from its non-contribution *Carey* account to fund advertisements to notify people about its petition and invite them to sign it likewise prohibits pure political speech in violation of the First Amendment.

55.     The Supreme Court has recognized individuals, *Buckley v. Valeo*, 424 U.S. 1, 45 (1976) (per curiam), and political committees, *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 497 (1985), have a fundamental First Amendment right to make unlimited independent expenditures. *See also Citizens United v. FEC*, 558 U.S. 310 (2010). The courts of this district have likewise recognized a political committee may accept unlimited contributions to a special segregated account which may be used only for the purpose of funding independent expenditures and may not be used for contributions. *See Carey v. FEC*, 791 F. Supp. 2d 121, 131-

132 (D.D.C. 2011); *see also Speechnow.org v. FEC*, 599 F.3d 686, 695-96 (D.C. Cir. 2010) (en banc). Accordingly, the First Amendment protects RFR's right to spend whatever funds it wishes from its non-contribution *Carey* account to engage in political speech, by both inviting people to sign its political petition and then providing that signed petition to Governor DeSantis.

*The Commission's Advisory Opinion is Inconsistent with Binding D.C. Circuit Precedent*

56.     In *Federal Election Comm'n v. Machinists Non-Partisan Political League*, 655 F.2d 380, 394 (D.C. Cir. 1981) [hereinafter, "*Machinists*"], the U.S. Court of Appeals for the D.C. Circuit refused to read the FECA to "imply coverage" for groups seeking to "draft" individuals to serve as federal candidates.

57.     The D.C. Circuit held, "Draft groups . . . aim to produce some day a candidate acceptable to them, but they have not yet succeeded. Therefore none is promoting a 'candidate' for office, as Congress uses that term in FECA." *Machinists*, 655 F.2d at 392. Moreover, because a draft committee's activities "are not related in any way to a person who ***has decided to become a candidate***," it has no "potential for corruption" that has been "specifically identified by Congress." *Id*. (emphasis added)

58.     *Machinists* repeatedly emphasized the difference between "activities [to] support an existing 'candidate'" and "attempts to convince the voters or [the individual himself] that he would make a good 'candidate' or should become a 'candidate.'" 655 F.2d at 396. Since a person who has not yet qualified as a candidate—including a person who may be "testing the waters"— is (by definition) not a candidate, disbursements made in the course of attempting to convince him "that he would make a good 'candidate' or should become a 'candidate'" cannot raise a potential for corruption, cannot qualify as "contributions" under FECA, and therefore are not subject to regulation by the Commission. *Id*.

59.     Moreover, the Supreme Court has expressly emphasized preventing actual or apparent corruption are the only constitutionally permissible justifications for contribution limits. *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014) (plurality op.). Given the D.C. Circuit's binding conclusions concerning the absence of corruption in efforts to draft a potential federal candidate, the First Amendment bars the Commission from applying contribution limits – particularly to that which is pure speech and not a contributed "thing" - to prevent RFR from providing its signed petition to Governor DeSantis.

### *The Commission's Advisory Opinion is Inconsistent with FECA's Legislative History*

60.     Both the Commission and Congress has previously recognized the FECA does not reach draft efforts, including payments made in connection with attempts to persuade someone to become a federal candidate. Over the years, the Commission has urged Congress to adopt amendments expanding the FECA's scope to cover such activities, and Congress has repeatedly considered such amendments. None of them, however, have been adopted. The Commission's advisory opinion interprets and applies FECA as if those unsuccessful statutory amendments had actually been adopted.

61.     Throughout the 1970s, the Commission repeatedly cautioned draft committees are not covered by FECA, and disbursements made for the purpose of inducing someone to run for federal office could not be "contributions" because the recipient was not yet a "candidate."

62.     In 1976, the FEC recommended Congress change the law to specify someone who contributes to a draft committee knowing a "substantial portion" of the contribution "will be expended on behalf of a clearly identified individual . . . be considered to have made a contribution to a 'candidate.'" FEC, Annual Report 1976, at 75 (quoted in *Machinists*, 655 F.2d at 395), https://www.fec.gov/resources/cms-content/documents/ar76.pdf.

63.     In 1987, the Commission asked Congress to expand the definition of "contribution" to include funds provided in the course of attempting to influence a person to run for federal office. *See* FEC, *Legislative Recommendations—1987, reprinted in* House Subcomm. on Elections, Comm. on House Admin., *Hearings on Campaign Finance*, 100th Cong. 1st Sess., at 869 (May 21, June 2, June 16, June 30, and July 14, 1987) (suggesting Congress amend the definitions of "contribution" and "expenditure" to include "funds contributed by persons 'for the purpose of influencing a clearly identified individual to seek nomination for election or election to federal office'"). The Commission warned these changes were necessary because "a nonauthorized group organized to support someone who has not yet become a candidate may operate completely outside the strictures of the Federal Election Campaign Act." *Id*.

64.     Throughout the early 1990s, Congress repeatedly considered legislation to redefine the terms "contribution" and "expenditure" in FECA to include payments or disbursements "for the purpose of expressly advocating that a clearly identified individual become a candidate for Federal office." H.R. 708, 103rd Cong., § 8(a)(3) (Feb. 2, 1993); S.7, 103rd Cong., § 422(a) (Jan. 21, 1993); H.R. 4934, 102nd Cong., § 504(a) (Apr. 9, 1992); S.6, 102nd Cong., § 622(a) (Apr. 11, 1991); S.143, 102nd Cong., § 422(a) (Jan. 14, 1991); S.2595, 101st Cong., § 422(a) (May 12, 1990); *see also* S. Comm. on Rules & Admin., *Hearings on Proposed Amendments to the Federal Election Campaign Act of 1971*, S. Hrg. 99-709, at 122, 303, App. 1F, at 272 (Nov. 5, 1985; Jan. 22 & Mar. 27, 1986) (reprinting S. 1891, 99th Cong., § 3(a), 3(d) (Dec. 3, 1985) (amending 2 U.S.C. §§ 431(8)(A)(i), 431(9)(A)(i))) (redefining "contribution" and "expenditure" to include payments or disbursements "for the purpose of expressly advocating that a clearly identified individual become a candidate for Federal office").

65.     In the course of drafting the Bipartisan Campaign Reform Act ("BCRA"), Pub. L. No. 107-155 (Mar. 27, 2002), Congress expressly considered and rejected the possibility of limiting disbursements to a person for the purpose of influencing them to become a federal candidate. In 1999, Representative Steny Hoyer, who is presently Majority Leader of the U.S. House of Representatives, introduced the FEC Reform and Reauthorization Act of 1999, H.R. 1818, 106th Cong. (May 14, 1999), as part of Congress' effort to amend the FECA.

a.     Section 106(a)(1) of his bill would have amended the definitions of "contribution" to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any clearly identified individual ***to seek nomination or election to Federal office***." H.R. 1818, 106th Cong., § 106 (May 14, 1999) (emphasis added).

b.     The bill similarly would have amended the definition of "expenditure" to include any "purchase, payment, distribution, loan, advance, deposit, or gift" made for that purpose. H.R. 1818, 106th Cong., § 106(a)(2) (May 14, 1999).

66.     Congress never adopted any of the proposed language defining the terms "contribution" and "expenditure" to extend to disbursements made in connection with efforts to influence a person to seek nomination or election to federal office. RFR's provision of its signed petition to Governor DeSantis therefore should not be deemed a "contribution."

*A Signed Petition is Not a "Contribution" Subject to Limits Under FECA*

67.     The FEC further erred in concluding RFR's signed petition constitutes a "contribution" subject to limits under the FECA.

68.     The FECA defines "contribution" as "any *gift* . . . of money or ***anything of value*** made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i) (emphasis added); 11 C.F.R. § 100.52(a) (emphasis added).

69.     The signed petition is not a contribution because it does not qualify as a "gift" within the colloquial meaning and ordinary usage of the term. *Cf.* In re *McDonald for Congress*, A.O. 1976-86, at *1 (Oct. 6, 1976) (determining whether an act constitutes a "gift" primarily based on the industry's customary practice). Pure political speech, which lies at the heart of the First Amendment, is not ordinarily characterized as a "gift," and therefore does not constitute a "contribution" under § 30116(8)(A)(i). *See, e.g.*, *Brunswick Corp.*, A.O. 1984-43, at *2 (Sept. 14, 1984) ("[T]he endorsement of a candidate by a corporation does not by itself constitute a prohibited contribution . . . ."). This conclusion remains true whether the speech takes the form of oral statements, voice recordings, letters from individual supporters, or a political petition signed by tens of thousands of a candidate's identified supporters. If RFR could organize tens of thousands of people to join together outside of Governor DeSantis' window to croon for his candidacy, they have the right to do so through a signed petition. Speech does not become a contribution simply because it is embodied in written form.

70.     Independently, another reason the signed petition is not a contribution is because it does not constitute a "thing of value." The regulation defining "thing of value" provides, "[T]he provision of ***any goods or services*** without charge or at a charge that is less than ***the usual and normal charge*** for such goods or services is a contribution." 11 C.F.R. § 100.52(d)(1) (emphasis added).

        a.     A list of signatories accompanying a petition is neither a "good" nor a "service" within the ordinary understanding of those terms. *Cf. Assoc. Buildings & Contractors*,

A.O. 1984-23, at 2 (June 22, 1984) (ruling, prior to *Citizens United*, a corporation or labor union may "endorse a candidate and may publicly announce its endorsement and state the reason or reasons for it," regardless of whether the endorsement is valuable, because it does not constitute a contribution).

      b.     Moreover, under this regulation's plain terms, a good or service must carry a usual and normal charge" for it to constitute "anything of value" and qualify as a contribution. 11 C.F.R. § 100.52(d)(1). Signed petitions are customarily provided to public figures free of charge; they are not regarded as "goods" or "services" for which the recipient must typically pay.

      71.     To the extent any doubt exists as to whether the signed petition should be deemed a "contribution," the FECA should be construed narrowly due to:

      a.     the constitutional avoidance doctrine, which counsels this court to avoid construing laws in ways that raise serious First Amendment questions unless there is no other choice, *Nat'l Labor Relations Bd. v. Catholic Bishop of Chicago*, 440 U.S. 490, 507 (1979);

      b.     the major questions doctrine, which requires courts to reject agency interpretations of statutes that unnecessarily raise serious political questions Congress would not have intended to *sub silentio* allow agencies to resolve, *W. Va. v. EPA*, 142 S. Ct. 2587, 2614 (2022), such as the FEC's advisory opinion construing the FECA to prohibit political petitions; and

      c.     the rule of lenity, which requires courts to resolve ambiguities in civil statutes that carry the possibility of criminal enforcement, such as the FECA, in favor of the regulated party, which here would be RFR, *see Cleveland v. United States*, 531 U.S. 12, 25 (2000).

*The FECA Does Not Empower the FEC to Regulate Transfers or Gifts*
*to Non-Candidates, Regardless of Whether They are "Testing the Waters"*

72.     The FECA does not allow the Commission to regulate disbursements to persons who are not candidates, regardless of whether such non-candidates have begun testing the waters.

73.     FECA limits the amount of a "contribution" from a person, including a non-multicandidate political committee such as RFR, to a "candidate." 52 U.S.C. § 30116(a)(1)(A); 11 C.F.R. § 110.1(b)(1); *see* 86 Fed. Reg. at 7869. A person may provide no more than $2,900 per election to a candidate. *Id*. The FECA defines "candidate," in turn, as a person who is seeking nomination or election to federal office and has exceeded $5,000 in "contributions" or "expenditures." 52 U.S.C. § 30101(2); 11 C.F.R. § 100.3(a).

74.     No provisions of federal law or regulations limit disbursements or transfers to individuals who have not yet begun testing the waters. There is no legal basis upon which the FEC's advisory opinion refused to affirm RFR's right to share its signed petition to Governor DeSantis before he begins testing the waters.

75.     Although FEC regulations purport to restrict disbursements to individuals who are "testing the waters," *see* 11 C.F.R. § 100.72(a), no statutory authority exists for them. The FECA does not impose limits on contributions to individuals who are not candidates, but are merely testing the waters. As explained above, 52 U.S.C. § 30116(a)(1)(A)'s contribution limits apply only to disbursements to "candidates." Accordingly, to the extent 11 C.F.R. § 100.72(a) is interpreted to limit contributions to non-candidates who are testing the waters, it is arbitrary, capricious, contrary to law, invalid, and unenforceable.

76.     Furthermore, on its face, the "testing the waters" regulation applies only to "funds" received by a person "for the purpose of determining whether [he or she] should become a candidate." 11 C.F.R. § 100.72(a). The regulation is far narrower than the statutory and regulatory definition of "contribution" which expressly includes gifts of either "money" or "anything of

value." 52 U.S.C. § 30101(8)(A)(i); 11 C.F.R. § 100.52(a). There is no language in the testing the waters regulation purporting to regulate the provision of anything other than "funds." Nothing in the regulation purports to regulate in-kind gifts or transfers of any sort to a person who is testing the waters. Accordingly, there is no legal basis for the Commission to attempt to limit in-kind contributions to non-candidates who are merely testing the waters.

77.     Finally, the "testing the waters" regulation, as construed by the Commissioners in this case, fails to give adequate warning to a reasonable person as to whether Governor DeSantis is deemed to be "testing the waters" for a potential candidacy at any particular point in time. A person is "testing the waters" under the regulation if that person is "determining whether [he or she] should become a candidate." 11 C.F.R. § 100.72(a). Under this ill-defined and highly subjective standard, it is impossible for the Commission to determine whether public figures who have repeatedly affirmed an intent to run for President in 2024, such as the incumbent President Joseph Biden, are "testing the waters."[4] In the context of this case, several Commissioners emphasized during the Commission's September 15, 2022 hearing the difficulty of determining under the Commission's vague and subjective standard whether Governor DeSantis—even at that time—was "testing the waters."

---

[4] *See, e.g.*, Brett Samuels, *Biden Says He Intends to Run in 2024, Has Not Made a "Firm Decision,"* THE HILL (7:49 P.M. ET, Sept. 18, 2022) (quoting President Biden as saying, "Look, my intention as I said to begin with is that I would run again. . . . But it's just an intention. But is it a firm decision that I run again? That remains to be seen."), https://thehill.com/homenews/administration/3649720-biden-says-he-intends-to-run-in-2024-has-not-made-a-firm-decision/; Sebastian Smith, *Biden Warns China and Russia, Hedges on Seeking Reelection*, BARRON'S (Sept. 18, 2022) (explaining Biden "surprised many by hedging on whether he'll seek reelection"), https://www.barrons.com/news/biden-hedges-on-seeking-reelection-01663552807; *see also* Carol E. Lee, et al., *Biden Aides are Quietly Assembling a 2024 Campaign as They Await a Final Decision on His Political Future*, FOX NEWS (Sept. 16, 2022), https://www.nbcnews.com/politics/joe-biden/biden-aides-are-quietly-assembling-2024-campaign-await-final-decision-rcna48005.

a.     Chair Dickerson suggested it is "unknown" and "speculative" whether Governor DeSantis was already "testing the waters," even before receiving RFR's signed petition, because the Commissioner has not "read every possible press report." *See* Video of Sept. 15, 2022 FEC Hearing, at 35:35 to 35:55 (suggesting) (Chair Dickerson), https://www.youtube.com/watch?v=BWfuTD46wwM.

b.     Commissioner Weintraub later suggested "you don't know whether [Governor DeSantis] is testing the waters or not." *Id*. at 52:44 to 53:56.

*c*.     Commissioner Broussard declared merely by accepting the signed petition, Governor DeSantis would be deemed to be "testing the waters." *Id*. at 46:53 to 47:02.

*The Commission's Advisory Opinion is Inconsistent*
*with FECA's Provisions for Conduit Contributions*

78.     To the extent the names and contact information of the petition's signatories are deemed to be "contributions" to Governor DeSantis, the source of the contributions are the signatories themselves, with RFR acting as a conduit to provide them to Governor DeSantis. Accordingly, RFR is not making an illegal excessive contribution by providing signatories' information, at their request and on their behalf, to Governor DeSantis.

79.     The FECA specifies, "[A]ll contributions made by a person, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, shall be treated as contributions from such person to such candidate." 52 U.S.C. § 30116(a)(8).

80.     RFR adds a person's name and contact information to the petition only if they affirmatively ask to sign the petition through RFR's website or phone number. RFR has not and will not add anyone to the petition without the signatory's request and consent, and will not append any information beyond that voluntarily provided by each signatory.

26

81.     RFR's website invites a person to sign the petition to declare, "I am Ready for Ron! Let Ron know I'm behind him and want to join his team!" A notice at the bottom of the screen informs users that by virtually signing the petition and providing their information, they are requesting to have RFR provide it to Governor DeSantis.

82.     Likewise, when a person calls RFR's telephone number to sign the petition, a recorded message invites them to join the petition if they wish to "Let Ron know, 'I am Ready for Ron!'" and that they are "behind him and want to join his team!'" This message notifies callers that by signing the petition, they are requesting to have their names and contact information provided to Governor DeSantis.

83.     RFR only adds people's names and contact information to the petition to provide to Governor DeSantis at their request. The only signatory information RFR appends to the petition is whatever contact information each signatory him- or herself decides to provide to be appended and sent to Governor DeSantis. If provision of such information constitutes an in-kind contribution—a position with which RFR strenuously disagrees—then RFR is merely acting as a conduit to pass along the "thing of value" provided by each petition signatory (i.e., their contact information), at their request and on their behalf, to Governor DeSantis.

84.     RFR seeks to provide a potential candidate with phone numbers and/or e-mail addresses of that potential candidate's political supporters who have signed a petition to him through RFR's online portal and wish to provide their contact information to him as a material part of that expression of political sentiment. In doing so, RFR would be acting similarly to ActBlue, WinRed, and other political committees major online platforms that lie at the heart of our nation's campaign financing system. These entities provide a potential or even actual candidates with the phone numbers and/or e-mail addresses (even though not legally required to do so) of that

27

candidate's political supporters who have made earmarked, conduit contributions to that candidate through the ActBlue or WinRed online portal. The FEC is defending a bizarre pay-to-play system where political contributions and the entities involved in processing them receive greater legal and constitutional protection than ordinary Americans seeking to engage in pure political speech by signing a petition without making a political contribution. ActBlue and Winred are not entitled to greater First Amendment rights than ordinary Americans who do not make contributions and groups like RFR seeking to help them join together through political petitions.

85.     The Commission has violated RFR's constitutional and statutory rights by refusing to authorize it to act as a conduit in this manner. The Commission also lacks legal and constitutional authority to bar RFR from spending money from its non-contribution *Carey* account to advertise its petition and invite people to sign it, so RFR may provide the signed petition— including their name and contact information—as a conduit to Governor DeSantis.

### Entitlement to Injunctive Relief

86.     RFR has suffered irreparable harm from the FEC's refusal to recognize RFR's unassailable constitutional right to provide its signed petition to Governor DeSantis as a private citizen, regardless of should he begin "thinking about" running or even more openly exploring the notion within the scope of the ambiguous testing the waters regulation, and even as a candidate. This unprecedented interference with protected First Amendment rights of pure political speech and expressive political association flies in the face of binding precedent, legislative history, and common sense. Likewise, the FEC's prohibition on RFR spending funds from its non-contribution *Carey* account to advertise its petition and invite people to sign it is a direct restraint on pure political speech. The harm is accentuated because the petition's impact will depend in part on the

timing, within the context of a quick-moving political environment and run up to the presidential campaign, of when RFR may give it to Governor DeSantis.

87.     Because the FEC has failed to issue an advisory opinion on the issue of whether RFR may provide its signed petition to Governor DeSantis before he begins testing the waters for a potential presidential candidacy, RFR has been wrongfully and arbitrarily deprived of a statutory "safe harbor" for engaging in such activity under 52 U.S.C. § 30108(c)(1)(A), (2). It has been chilled from providing the signed petition (or any supplements or updates to the petition) to Governor DeSantis at this time, before he has begun testing the waters, by the threat of administrative proceedings and sanctions before the Commission.

88.     The FEC has issued an advisory opinion affirmatively prohibiting RFR from providing its signed petition, or any updates or supplements, to Governor DeSantis once he begins testing the waters or in the event he becomes a candidate. RFR does not have any knowledge, or involvement in the decision, of when Governor DeSantis will begin testing the waters, or whether or when he will become a presidential candidate. The prohibitions set forth in the FEC's advisory opinion; the statements various Commissioners made during the FEC's September 15, 2022 hearing in this matter; and the reasonably likely threat of administrative proceedings, civil penalties, and criminal prosecution have chilled RFR from providing its signed petition with signatories' contact information, and/or any supplements or updates, to Governor DeSantis because the Commission might erroneously conclude he is "testing the waters." RFR has likewise been chilled from providing its signed petition with signatories' contact information. and/or any supplements or updates, to Governor DeSantis once he begins testing the waters or becomes a candidate for the Republican nomination for President.

a.      RFR wishes to be able to continue amassing signatures for its petition as long as possible so that it has the greatest potential impact. It will be unable to do so, however, if Governor DeSantis' unilateral decision—which may happen at any time, without any advance warning to RFR—to begin testing the waters and/or become a candidate would make it illegal for RFR to provide its signed petition to him.

b.      RFR has concrete plans to continue spending between $25,000 and $50,000 each week—including funds from its non-contribution *Carey* account—soliciting and collecting signatures and signatories' contact information for its petition, even after Governor DeSantis begins testing the waters and/or becomes a presidential candidate. It will be forced to discontinue doing so if Governor DeSantis' unilateral decision—which may happen at any time, without any advance warning to RFR—to begin testing the waters and/or become a candidate would make it illegal for RFR to provide its signed petition to him.

89.     RFR has no remedy at law for:

a.      the FEC's refusal to affirm RFR right to provide the signed petition to Governor DeSantis before he begins testing the waters;

b.      the FEC's prohibition on RFR providing the signed petition to Governor DeSantis either while he is either testing the waters or a candidate; and

c.      the FEC's ban on RFR spending funds from its non-contribution *Carey* account to fund advertisements to invite people to sign the petition.

90.     The hardship to RFR of not being permitted to engage in the expressive political activities set forth in Paragraph 88-89 outweighs the harm to the FEC of being barred from improperly and unconstitutionally applying the FECA in this context in direct contravention of binding Circuit Court precedent.

30

91.     The public interest weighs heavily in favor of allowing RFR to provide its signed petition to Governor DeSantis and continue to fund advertisements from its non-contribution *Carey* account to invite people to sign it.

<u>**This Matter is Capable of Repetition Yet Evading Review**</u>

92.     RFR is reasonably likely to engage in similar petition campaigns to draft individuals, potentially including Governor DeSantis, to run for federal office in future election cycles. It is reasonably likely to seek to provide such petitions, supplements, and/or updates to the petitions to potential candidates before they begin testing the waters, while they are testing the waters, and after they become candidates. It is reasonably likely to seek to fund such future efforts, in whole or in part, through its non-contribution *Carey* account.

<u>**CAUSES OF ACTION**</u>
**COUNT I**
**FIRST AMENDMENT, U.S. Const. amend. I**

93.     Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

94.     The FEC's response to RFR's advisory opinion request has chilled RFR from providing its signed petition to Governor DeSantis at any time, including before he begins testing the waters, while he is testing the waters, or after he becomes a candidate.

95.     RFR faces a reasonable probability of investigation, administrative proceedings, and sanctions if it provides its signed petition to Governor DeSantis at any time, including before he begins testing the waters, while he is testing the waters, or after he becomes a candidate.

96.     RFR's fundamental First Amendment rights to engage in political speech and expressive political association have been violated by the FEC's response to RFR's advisory

opinion request and the reasonable prospect of prosecution if RFR provides its signed petition to Governor DeSantis.

a. RFR has a fundamental First Amendment right to engage in pure political speech by providing its signed petition to Governor DeSantis, particularly as part of an effort to draft him as a candidate for President;

b. RFR has a fundamental First Amendment right to engage in truthful expression by providing Governor DeSantis with factual information about individuals who support his potential or actual candidacy for President and wish to express their support for him, including their names and contact information as supplied by them;

c. RFR has a fundamental First Amendment right to spend funds from its non-contribution *Carey* account to fund communications to invite people to sign its petition;

d. RFR and the petition's signatories have a fundamental First Amendment right to engage in expressive political association by having the petition containing their own names and contact information as provided by them presented to Governor DeSantis; and

e. The petition's other signatories have a fundamental First Amendment right to engage in non-anonymous political expression by having their name and contact information included on the petition provided to Governor DeSantis;

WHEREFORE, Plaintiff RFR is entitled to judgment the FEC's advisory opinion in *Ready for Ron*, A.O. 2022-12 (Sept. 28, 2022), violates the First Amendment, and the FECA's contribution limits, 52 U.S.C. § 30116(a)(1)(A), (a)(1)(C), (a)(2)(C); 11 C.F.R. § 110.1(b)(1), (d); 86 Fed. Reg. at 7868, are unconstitutional as applied to:

(i) signed petitions to a person to draft them as a candidate or encourage them to remain a candidate, including the contact information provided by the signatories; and

(ii) a political committee's non-contribution account used to fund communications to invite people to sign a "draft" petition and/or supplements or updates to the petition.

## COUNT II
## CHALLENGE TO FEC'S REFUSAL TO ISSUE REQUESTED ADVISORY OPINION UNDER THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 702

97.      Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

98.     5 U.S.C. § 702 provides, "A person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

99.     RFR requested an advisory opinion from the FEC confirming its right to provide its signed petition to Governor DeSantis before he is testing the waters, while he is testing the waters, and in the event he becomes a candidate, and to fund communications to invite people to sign the petition in part through its non-contribution account.

100.     The FEC refused to provide RFR with the relief it sought. The Commission declined to issue an opinion on whether RFR may provide its signed petition to Governor DeSantis before he begins testing the waters. It ruled RFR may not provide its signed petition to him while he is testing the waters or once he becomes a candidate. It further ruled RFR may not spend funds from its non-contribution *Carey* account to advertise its petition and invite people to sign it.

101.     The FEC has denied RFR a statutory "safe harbor" under 52 U.S.C. § 30108(c)(1)(A), (2), for RFR's proposed course of conduct, thereby leaving RFR exposed to the threat of administrative proceedings and sanctions before the commission, as well as the chilling effect arising from such threat.

102.    The FEC's refusal to provide RFR with its requested advisory opinion approving its proposed conduct, as well as its conclusions affirmatively prohibiting most of RFR's proposed activities, adversely affected and aggrieved RFR.

103.    The FEC's refusal to provide RFR with its requested advisory opinion approving its proposed conduct, as well as its conclusions affirmatively prohibiting most of RFR's proposed activities, were:

    a.    arbitrary and capricious, and not in accordance with law;

    b.    contrary to constitutional right;

    c.    in excess of statutory authority and limitations;

52 U.S.C. § 706(2)(A)-(C).

104.    This Court should vacate the FEC's advisory opinion in *Ready for Ron*, A.O. 2022-12 (Sept. 28, 2022), and remand for reconsideration in accordance with its ruling.

WHEREFORE Plaintiff RFR is entitled to judgment the FEC's advisory opinion in *Ready for Ron*, A.O. 2022-12 (Sept. 28, 2022), is arbitrary, capricious, not in accordance with law, contrary to constitutional right, and/or in excess of statutory authority and limitations, and therefore is unenforceable, vacated, and remanded for reconsideration.

## COUNT III
## DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

105.    Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

106.    The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201

107.    RFR seeks a declaration of its right to provide its signed petition, as well as any supplements and updates, to Governor DeSantis, regardless of whether he is testing the waters or a candidate. It further seeks a declaration of its right to spend money from its non-contribution *Carey* account to fund communications inviting people to sign the petition.

108.    RFR has a live, concrete controversy with the FEC concerning the proper interpretation of the U.S. Constitution and Federal Election Campaign Act with regard to its right to expend funds from its non-contribution *Carey* account to solicit and gather signatures for its petition, as well as its right to provide its signed petition to Governor DeSantis.

WHEREFORE, Plaintiff RFR is entitled to a declaratory judgment:

(i)    The FEC's advisory opinion in *Ready for Ron*, A.O. 2022-12 (Sept. 28, 2022), is invalid and unenforceable;

(ii)    The First Amendment and Federal Campaign Finance Act protect the right of RFR to provide its signed petition to Governor DeSantis, including the names and contact information of its signatories, regardless of whether he has begun testing the waters or become a candidate; and

(iii)    The First Amendment and Federal Campaign Finance Act protect the right of RFR to spend money from its non-contribution account to fund communications inviting people to sign the petition.

## COUNT IV
## EQUITABLE CLAIM FOR INJUNCTIVE RELIEF

109.    Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

110.    The U.S. Supreme Court has held, "[F]ederal courts may in some circumstances grant injunctive relief against . . . . violations of federal law by federal officials. . . . The ability to

35

sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England. It is a judge-made remedy." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (internal citations omitted).

111.    This Court should grant RFR injunctive relief against the FEC, barring the FEC from enforcing contribution limits, 52 U.S.C. § 30116(a)(1)(A), (a)(1)(C), (a)(2)(C); 11 C.F.R. § 110.1(b)(1), (d), or other associated restrictions against RFR for:

a.    providing its signed petition, including the names and contact information for its signatories, as well as any updates or supplements, to Governor DeSantis regardless of whether he is testing the waters or a candidate; or

b.    funding expenses associated with the petition, including but not limited to communications notifying people about the petition and inviting them to sign it, through its non-contribution *Carey* account.

112.    RFR faces a reasonable threat of enforcement by the FEC for engaging in such conduct.

113.    RFR faces irreparable injury from the chilling effect on the exercise of its constitutional and statutory rights to engage in political expression and association.

114.    RFR has no remedy at law for the violation of its constitutional and statutory rights to engage in political expression and association.

115.    The hardship to RFR of being unable to provide its signed petition to Governor DeSantis at a time of its choosing, and the related prohibition on paying for expenses associated with the petition from its non-contribution *Carey* account, outweighs any harm to the FEC from being unable to enforce such unconstitutional and illegal restrictions.

116.    There is a strong public interest in allowing RFR to provide its signed petition to Governor DeSantis at a time of its choosing, regardless of whether Governor DeSantis has begun testing the waters or become a candidate. The public likewise has a strong interest in allowing RFR to fund communications from its non-contribution account to notify people about the petition and invite them to sign it.

WHEREFORE, Plaintiff RFR is entitled to preliminary and permanent injunctions enjoining the Commission and its agents from:

(i)     enforcing 52 U.S.C. § 30116(a)(1)(A); 11 C.F.R. § 110.1(b)(1), or any other provision of the Federal Election Campaign Act against RFR for providing its signed petition (including signatories' names and contact information), as well as any supplements or updates, to Governor DeSantis at a time of its choosing, regardless of whether he has begun testing the waters or become a candidate;

(ii)    enforcing 52 U.S.C. § 30116(a)(1)(C), (a)(2)(C); 11 C.F.R. § 110.1(d) or any other provision of the Federal Election Campaign Act against RFR for funding expenses relating to its petition, including but not limited to communications notifying people about its petition and inviting them to sign it, through its non-contribution *Carey* account;

(iii)   conducting any investigation, initiating any administrative or other proceedings, making any criminal referral, imposing any fine or other sanction, or otherwise attempting to enforce the provisions identified above against Plaintiff or any other people, groups, or entities for engaging in such conduct.

## COUNT V
## FEDERAL ELECTION CAMPAIGN ACT, 52 U.S.C. § 30116(a)(1)(A), (a)(8)

117.    Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

37

118.    52 U.S.C. § 30116(a)(1)(A) provides in relevant part, "[N]o person shall make contributions . . . to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $2,000."

119.    52 U.S.C. § 30116(a)(8) provides in relevant part, "[A]ll contributions made by a person, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, shall be treated as contributions from such person to such candidate."

120.    RFR seeks a declaration of its right under 52 U.S.C. § 30116(a)(1)(A) and 11 C.F.R. § 110.1(b)(1) to provide its signed petition to Governor DeSantis, including the names and contact information for its signatories, at a time of its choosing, including before he is testing the waters, while he is testing the waters, or while he is a candidate.

121.    RFR seeks a declaration of its right under 52 U.S.C. § 30116(a)(1)(C), (a)(2)(C) and 11 C.F.R. § 110.1(d) to pay for expenses associated with the petition from its non-contribution *Carey* account.

122.    Either in addition, or in the alternative, RFR seeks a declaration of its right to act as a conduit under 52 U.S.C. § 30116(a)(8) to transmit names and contact information from the petition's signatories to Governor DeSantis, without having such information operate as a contribution from RFR itself.

123.    RFR seeks an injunction barring the Commission from enforcing 52 U.S.C. § 30116, 11 C.F.R. § 110.1 or related provisions of the Federal Election Campaign Act against it for:

a.      providing its signed petition to Governor DeSantis, including the names and contact information for its signatories, at a time of its choosing, including before he is testing the waters, while he is testing the waters, or while he is a candidate; or

b.      funding expenses relating to its petition, including but not limited to communications notifying people about its petition and inviting them to sign it, through its non-contribution *Carey* account.

WHEREFORE, Plaintiff RFR is entitled to injunctive and declaratory relief under 52 U.S.C. § 30116(a)(1), (a)(8).

**COUNT VI**
**CHALLENGE TO FEC'S "TESTING THE WATERS" REGULATION**
**UNDER THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 702**

124.    Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

125.    5 U.S.C. § 702 provides, "A person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

126.    RFR requested an advisory opinion from the FEC confirming its right to provide its signed petition to Governor DeSantis, including while he is testing the waters for a potential candidacy for President.

127.    The Commission ruled RFR may not provide its signed petition to Governor DeSantis while he is testing the waters. The Commission's determination rested upon its interpretation of its "testing the waters regulation," 11 C.F.R. § 100.72(a).

128.    The "testing the waters" regulation declares the FECA's contribution limits apply to transfers or donations to an individual who is "testing the waters" for a potential federal

candidacy, *see* 11 C.F.R. § 100.72(a), even though he or she has not yet become a candidate under the FECA, 52 U.S.C. § 30101(2) (defining the term "candidate); *accord* 11 C.F.R. § 100.3(a).

129.    By their express terms, the FECA's contribution limits unambiguously apply only to a person who has become a "candidate" under the FECA's definition of that term. 52 U.S.C. § 30116(a)(1)(A); 11 C.F.R. § 110.1(b)(1).

130.    The "testing the waters" regulation, 11 C.F.R. § 100.72(a) applies contribution limits to certain non-candidates despite the complete absence of any statutory authority. Accordingly, § 100.72(a) is arbitrary, capricious, not in accordance with law, in excess of statutory authority and limitations, and unenforceable. 52 U.S.C. § 706(2)(A), (C).

131.    RFR is entitled to provide its signed petition with its signatories' contact information to Governor DeSantis, regardless of whether he is testing the waters for a potential federal candidacy.

WHEREFORE Plaintiff RFR is entitled to judgment 11 C.F.R. § 100.72 is arbitrary, capricious, not in accordance with law, and/or in excess of statutory authority and limitations, and therefore is unenforceable and vacated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    Preliminary and permanent injunctions prohibiting the FEC from applying 52 U.S.C. § 30116, or any regulations implementing that statute against RFR:

a.    for providing its signed draft petition, including the names and contact information for its signatories, to Governor DeSantis, at any time, including before he is testing the waters for a potential federal candidacy, while he is testing the waters, and in the event he becomes or is deemed a candidate; or

b.      funding expenses relating to its petition, including but not limited to communications notifying people about its petition and inviting them to sign it, through its non-contribution *Carey* account.

2.      A declaratory judgment holding:

a.      52 U.S.C. § 30116(a) and 11 C.F.R. § 110.1(b) are unconstitutional as applied to a political committee's provision of a signed political draft petition, including the names and contact information of its signatories, to any person, regardless of whether they are testing the waters or a candidate;

b.      52 U.S.C. § 30116(a) and 11 C.F.R. § 110.1(d) are unconstitutional as applied to prohibiting a political committee's expenditure of funds which had been raised without regard to contribution limits for expenses relating to the petition, including but not limited to political communications notifying people about the petition and inviting them to sign it;

c.      52 U.S.C. § 30116, as a matter of statutory interpretation, is inapplicable to a political committee's provision of a signed political draft petition, including the names and contact information of its signatories, to any person, regardless of whether they are testing the waters or a candidate;

d.      52 U.S.C. § 30116 does not limit transfers to a person who is not a candidate, including individuals who have not yet begun testing the waters and individuals who are testing the waters;

e.      52 U.S.C. § 30116(a)(8) allows RFR to act as a conduit to pass signatures and contact information from a petition's signatories—at the request of the signatories and with their approval—to the petition's recipient; and

    f.  11 C.F.R. § 100.72 is void and unenforceable, and does not preclude RFR from providing its signed petition to Governor DeSantis, regardless of whether he is "testing the waters" for a potential federal candidacy.

  3.  An order vacating and setting aside:

    a.  the FEC's advisory opinion in *Ready for Ron*, A.O. 2022-12 (Sept. 28, 2022), and

    b.  the FEC's "testing the waters" regulation, 11 C.F.R. § 100.72.

  4.  Costs and attorneys' fees pursuant to the Equal Access to Justice Act, as well as any other applicable statute or other authority; and

  5.  Such other relief as this Court deems just and equitable.

Dated this 27th day of October, 2022.

        Respectfully submitted,

          /s/ Dan Backer

        Dan Backer, Esq. (D.C. Bar No. 996641)
        Chalmers & Adams LLC
        441 N. Lee Street, Suite 300
        Alexandria, VA 22314
        (202) 210-5431
        dbacker@ChalmersAdams.com

        Lilian Rodriguez-Baz, Esq.*
        Chief Legal Counsel, Ready for Ron
        66 W Flagler Street, Suite 900
        Miami, FL 33130
        (561) 291-9897
        Lilian@ReadyForRon.com

        *Motion for pro hac vice admission forthcoming
        *Attorneys for Plaintiff*